**Electronically Filed
Supreme Court
SCWC-18-0000692
15-JUN-2020
08:43 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

SAMUEL JOO RIM SU, Petitioner/Defendant-Appellant.

_____

SCWC-18-0000692

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000692; CASE NO. 1DTA-18-00252)

JUNE 15, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.   Introduction

Samuel Joo Rim Su ("Su") was convicted of Operating a
Vehicle under the Influence of an Intoxicant ("OVUII").  At
trial, his counsel sought to impeach the credibility of one of
the State's witness, Honolulu Police Department ("HPD") Officer
Jared Spiker ("Officer Spiker"), under Hawai'i Rules of Evidence

("HRE") Rule 608(b).  That rule states, in relevant part, as follows:

> **Specific instances of conduct.**  Specific instances of the conduct of a witness, for the purpose of attacking the witness' credibility, if probative of untruthfulness, may be inquired into on cross-examination of the witness and, in the discretion of the court, may be proved by extrinsic evidence. . . .

Defense counsel contended that the "specific instances of conduct" evincing Officer Spiker's untruthfulness were contained in transcripts from three other proceedings in which Officer Spiker was a witness for the State:  State v. Kuni, State v. Lee, and State v. Thomas.  The District Court of the First Circuit ("district court")[1] did not allow defense counsel to cross-examine Officer Spiker concerning these proceedings, ruling that none were probative of Officer Spiker's untruthfulness.

The Intermediate Court of Appeals ("ICA") upheld the evidentiary rulings in a summary disposition order ("SDO").  State v. Su, CAAP-18-0000692, 2019 WL 2296467 (Haw. App. May 30, 2019) (SDO).  The ICA further stated that the district court "was able to review all the materials" submitted by defense counsel concerning the Kuni, Lee, and Thomas proceedings.  Su, SDO at 6.  Therefore, the ICA held, the district court "had 'in its possession sufficient information to appraise the biases and motivations of the witness' and did not abuse its discretion by

---

[1]     The Honorable Trish K. Morikawa presided.

preventing further cross-examination of Officer Spiker" concerning his testimony in those proceedings.  Id.

We accepted certiorari to clarify that admissibility of evidence under HRE Rule 608(b)[2] involves a two-step inquiry: (1) whether the specific conduct evidence proffered for the "purpose of attacking the witness'[s] credibility" is "probative of untruthfulness," and, if so, (2) whether the probative value of the specific conduct is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence pursuant to HRE Rule 403.  An appellate court reviews the trial court's two-step admissibility determination under the right/wrong standard as to the first step, and under the abuse of discretion standard as to the second step.  We also accepted certiorari to correct the ICA's SDO to the extent that it suggests that a trial court can consider excluded evidence in reaching judgment.

We therefore vacate the ICA's July 2, 2019 Judgment on Appeal, as well as the district court's August 2, 2018 Judgment.

---

[2]    We are addressing the evidentiary rule.  A defendant also has a constitutional right to cross-examine a witness and elicit testimony upon matters bearing upon the witness's credibility.  See State v. Jones, 62 Haw. 572, 578, 617 P.2d 1214, 1219 (1980).

This case is remanded to the district court for further proceedings consistent with this opinion.

## II.  Background

### A.  District court proceedings

On January 24, 2018, the State charged Su via Complaint with one count of OVUII, in violation of HRS § 291E-61(a)(1) and/or (a)(3) (2007).[3]

### 1.  Defense notices of intent to use impeachment evidence

#### a.  First notice of intent (Kuni ADLRO proceedings)

On May 1, 2018, Su filed three Notices of Intent to Use Impeachment Evidence against the State's witness, Officer Spiker.  The first notice of intent informed the court that Su intended to use extrinsic evidence, in the form of transcripts of a proceeding, from an unrelated ADLRO hearing involving Respondent Selina Kuni, to show that Spiker had "admitted to submitting a false sworn statement" to ADLRO.  The transcript read as follows, with emphasis added:

> ATTORNEY BURK [counsel for Selina Kuni]:  Okay.  And after going to the police station, taking Ms. Kuni to the police station, you went over the notice of administrative revocation with her?
>
> OFFICER SPIKER:  Yes.
>
> ATTORNEY BURK:  Okay.  And following, I guess after going over the notice of administrative revocation with her you also signed the fourth page, correct?
>
> OFFICER SPIKER:  Yes.

---

[3]    Su was ultimately tried on just the HRS § 291E-61(a)(1) charge.

ATTORNEY BURK: Okay. And <u>on the fourth page you swear and affirm that the pages one to four of the form that you handed in provided to the ADLRO were read to her and was issued to her?</u>

OFFICER SPIKER: Yes.

. . . .

ATTORNEY BURK: Yeah. So I am handing you exhibit A for identification. Do you recognize that?

OFFICER SPIKER: Yes.

ATTORNEY BURK: Okay. And what do you recognize that to be?

OFFICER SPIKER: Appears to be the revocation paper I read to Ms. Kuni.

ATTORNEY BURK: The first page only.

OFFICER SPIKER: The first page, yeah.

ATTORNEY BURK: Okay.

. . . .

ATTORNEY BURK: Okay. Now and this was the form that you gave to Ms. Kuni?

OFFICER SPIKER: I believe so, yes.

ATTORNEY BURK: Okay. Now could you look at the form which was handed to the ADLRO?

OFFICER SPIKER: Uh huh.

. . . .

ATTORNEY BURK: And we direct you to part one, paragraph two.

OFFICER SPIKER: Yes.

ATTORNEY BURK: Those are different, correct?

OFFICER SPIKER: Yes.

ATTORNEY BURK: Okay. So the form that you issued, the form that you issued to Ms. Kuni is in fact not the form that you provided to the ADLRO? It is not identical to the one you provided to ADLRO?

OFFICER SPIKER: Yes.

ATTORNEY BURK:  Okay.  And the form that you issued or gave to the A[D]LRO, handed in to the ADLRO you had altered the form after giving it to Ms. Kuni, correct?

OFFICER SPIKER:  I believe so, yes.

ATTORNEY BURK:  Explain, if you have an explanation, or if you recall.

OFFICER SPIKER:  I can't recall why I did that because normally I normally check it off and then make the copies but I can't recall why, I know she initialed everything that she refused.  I just made an error on my part.  As I recall she did initial a refusal . . .  I guess it is just --

ATTORNEY BURK:  But whenever, on the form when you swear and affirm that you handed that form to her, that is not in fact true then, correct?

OFFICER SPIKER:  Yes, in this instance, yes, not true.

ATTORNEY BURK:  Thank you.  No further questions.

(Emphases added.)

### b.  Second notice of intent:  Lee OVUII trial

In the second notice of intent, Su asked the district court to take judicial notice of the records and files in an unrelated OVUII case, State v. Lee.  He intended to use, as extrinsic evidence, testimony Officer Spiker provided about how the defendant in that case, Michelle Lee, had been driving on the wrong side of the road.  The judge in the Lee case, Judge Lanson Kupau, specifically found that Officer Spiker's testimony did not make "physical sense" and acquitted the defendant.  Spiker's testimony had proceeded as follows:

Q [by the State on direct examination]:  And, Officer Spiker, on . . . October 26, 2016, what did you initially stop the defendant for?

6

A [Spiker]:  The defendant was driving on the wrong side of the road, crossing the double solid yellow lines on Kapi'olani Boulevard just prior to Pi'ikoi Street.

. . . .

Q:  And what was your vantage point when you observed [the vehicle going on the wrong side of the road]?

A:  I'd say about maybe 20 yards away.

. . . .

A:  It was traveling head-on in the opposite direction.  I was traveling east on Kapi'olani Boulevard and the -- and the vehicle was traveling west in the furthest makai lane.

Q:  All right.  And about how far away was the vehicle when you first made this observation?

A:  I'd say about 20 yards.

Q:  Okay.  And do you recall, you said also that you saw the vehicle cross over double solid yellow lines?

A:  Yes.

Q:  When did you see that in the sequence of events?

A:  . . . . [W]hat caught my attention was I observed a white BMW, it was about -- from my estimation about three to five yards over the double solid yellow line, traveling west in the eastbound side of Kapi'olani Boulevard.

Q:  Okay.

A:  For about four to eight seconds.  That's what caught my attention.

. . . .

Q:  . . . . And which lane were you in on the eastbound direction?

A:  On the middle lane.

On cross-examination, the defense attorney elicited the following testimony from Officer Spiker about his observations of the defendant's driving:

Q:  On October 26 you said you were 20 yards away, correct, when you first observe[d] Miss Lee?

7

A:  It's an estimate around there, yes.

Q:  About 20 yards.  And but you were traveling, correct?

A:  Yes.

Q:  You were driving?

A:  Yes.

Q:  Okay.  And what is the speed limit in the area?

A:  Thirty-five miles per hour.

Q:  And were you going [the] speed limit or were you going slower or faster would you estimate when you first saw [the defendant driving]?

A:  Maybe -- maybe a little slower than the speed limit.

Q:  So about 30 maybe?

A:  I can't speculate.  Maybe 25.

Q:  Okay.  Is -- well, and would you estimate Miss Lee was driving at about the speed limit?

A:  I'd say around there.  I can't recall her speed.

Q:  She was -- but speeding wasn't an issue?

A:  She was not traveling -- she was not speeding, no.

At the close of evidence, defense counsel moved for a judgment of acquittal, arguing that Officer Spiker's testimony "just doesn't make sense."  Defense counsel argued there should have been a collision between the defendant and Officer Spiker if, as Officer Spiker testified, (1) both were separated by a distance of 20 yards; (2) he was traveling at 25 miles an hour; (3) she was traveling at 35 miles an hour; (4) the defendant was "three to five yards" over the double solid yellow line, meaning in Officer Spiker's lane of travel; and (5) Officer Spiker observed her driving towards him for four to eight seconds.  The

district court granted the defendant's motion for judgment of
acquittal, stating the following:

> Looking in the light most favorable to [the] State and
> resting solely upon the testimony of Officer Spiker at this
> point in time, the Court agrees with defense counsel.
> Officer Spiker's testimony simply does not make sense as he
> was -- he testified that she crossed the double solid line
> three to five yards, which is nine to fifteen feet, at
> approximately 20 yards away from him in the opposite
> direction.
> And if she was going the speed limit, and even if he
> was going at 25 miles an hour, within seconds that places
> her not only in the direct lane oncoming Officer Spiker,
> but at 15 feet at his outside estimate would place her in
> the -- partially the middle lane.  So and in the event at
> that speed and if we listen to Officer Spiker and that she
> was at that distance for four to eight seconds simply
> doesn't make physical sense.
> As a result, the Court cannot take his testimony and
> grants the motion for judgment of acquittal.

### c.   Third notice of intent:   Thomas harassment trial

Lastly, in the third notice of intent, Su's counsel asked
the district court to take judicial notice of the records and
files in an unrelated harassment case involving defendant
Darrell Thomas, whom the district court found not guilty after a
bench trial.  Su's counsel intended to introduce extrinsic
evidence of Officer Spiker's police report, recounting Thomas's
actions during a brawl in the lobby of the Ala Moana Hotel.
Su's counsel alleged the details in the police report "d[id] not
match the video evidence from the case."  Specifically, Officer
Spiker's police report related that, during the brawl, he
encountered Thomas, who "had a fighting stance and his fists
were clenched."  The police report stated Thomas refused to
comply when Officer Spiker placed him under arrest for

9

harassment, so Officer Spiker "did a double-leg take down and took [Thomas] to the ground."  According to the police report, Thomas then told Officer Spiker, "[F]uck you pig."

Su's counsel asserted that video evidence showed Thomas assisting a person who had been knocked out and was lying on the ground.  According to Su's counsel, a third party pushed Thomas into Officer Spiker, who then tackled Thomas to the ground and ran out of the hotel lobby.  Su's counsel stated Officer Spiker then returned to the hotel lobby and confronted Thomas, who held his open palms out and appeared to be pleading with Officer Spiker.  Su's counsel contended Officer Spiker then arrested and handcuffed Thomas without incident.

To support his argument, Su's counsel appended a declaration from Thomas's counsel, William Li, averring that the still photos (appended as exhibits to the notice of intent) accurately depicted the incident that was captured on a video-recording of the Ala Moana Hotel lobby, which had been entered into evidence in Thomas's case.  Su's counsel represented that the video-recording was "later destroyed by the prosecution."

Su's counsel also appended as exhibits the trial transcripts in Thomas's case, in which Officer Spiker testified consistently with his police report.  Su's counsel argued that, on cross-examination, Officer Spiker stated that the video-

recording did not show Thomas with clenched fists or throwing punches. Thomas was ultimately acquitted.

2. **The State's memorandum in opposition to Defendant's notices of intent #1, #2, and #3**

In its memorandum in opposition to the defense's three notices of intent, the State asked the district court to preclude introduction of the evidence from the Kuni, Lee, and Thomas proceedings. The State quoted State v. Torres, 85 Hawai'i 417, 425, 945 P.2d 849, 857 (App. 1997), for the following proposition about HRE Rule 608: "[W]itness character evidence may be defined as evidence that directly relates to general credibility of the witness, rather than the believability of specific testimony, and conveys some judgment about the ethics or moral qualities of that witness." The ICA in Torres went on to note that, "in many circumstances, a witness's misstatements may be due to defects in memory or knowledge, or attributable to bias, rather than indicative of untruthfulness." 85 Hawai'i at 427, 945 P.2d at 859. The State argued that Officer Spiker's testimony in the Kuni, Lee, and Thomas proceedings "only show that Officer Spiker is a human being" who makes mistakes; may not accurately estimate distances and speeds; and may not remember the exact details of an incident that occurred months earlier, lasted two minutes, and involved over 60 people brawling in a hotel lobby. First, the State argued that Officer

Spiker's testimony in the Kuni proceeding showed only that he checked off a box on Kuni's paperwork later and that he "admit[ted] to making a mistake."  Second, the State contended that Officer Spiker's testimony in the Lee case was "rejected because 'it didn't make sense' to Judge Kupau, not because Officer Spiker had a reputation or character for untruthfulness."  Third, the State asserted that discrepancies in Officer Spiker's police report and the video-recording in the Thomas case, at most, called into question his "credibility as to personal knowledge," but did not give rise to a "character of untruthfulness."

### 3.  Trial

Disposition of Su's notices of intent was consolidated with trial on the HRS § 291E-61(a)(1) charge.  The district court proposed calling Officer Spiker to the stand for direct examination, after which it would address the defense's notices of intent; counsel for the State and for Su agreed.

Before Officer Spiker was called to testify, however, the State called Officer Mitchell Cadena ("Officer Cadena") to testify.  Officer Cadena testified that on January 6, 2018, at approximately 12:55 a.m., he saw Su on a moped on Wilder Avenue going eastbound, prior to Ke'eaumoku Street.  Su was "driving like 'S' pattern in the lane," meaning he was "[g]oing side to side within the lane," before crossing into an adjacent

12

eastbound lane of travel twice, and then crossing the double-yellow line into the westbound lanes of travel once.  Officer Cadena then initiated a traffic stop and called for back-up; Officer Spiker would arrive in a few minutes to assist Officer Cadena.  Upon speaking with Su, Officer Cadena "detected an odor of some sort of an alcoholic beverage emitting from [Su's] breath," and noted Su's "eyes were red, watery, and glassy."

The State then called Officer Spiker, who testified on direct examination that he covered Officer Cadena on a traffic stop; Officer Cadena had pulled over Su, and Officer Spiker asked Su to perform three standardized field sobriety tests: the Horizontal Gaze Nystagmus test, the Walk-and-Turn test, and the One-Leg Stand test.  Officer Spiker testified that he detected a strong odor of an alcoholic type beverage coming from Su's breath, and Su had red, glassy, watery eyes; slurred speech; and a red, flushed face.  Officer Spiker testified that Su was unsteady on his feet throughout the tests, for example, swaying during the Horizontal Gaze Nystagmus test, missing several steps and not following instructions on the Walk-and-Turn test, and hopping about with his arms extended to balance himself on the One-Leg Stand test.  Officer Spiker then arrested Su on suspicion of OVUII.

After Officer Spiker's direct examination, he was excused from the courtroom so that the district court could address the

defense's notices of intent.  As to the first notice of intent,
the district court ruled that it would not allow defense counsel
to impeach Officer Spiker with the Kuni ADLRO proceedings,
explaining as follows:

> So the court's going to note that the court does agree with
> the State in a sense that [Officer Spiker] did make the
> markings.  He looked at it.  He -- in his testimony, he
> explained why he did it.  He said it was an error on his
> part.  He did -- he recalled he did initial a refusal.  And
> so based on that, the court's going to note that he
> admitted that the form was altered after giving it to her.
> So while -- I guess -- well, technically, they signed the
> forms.  He did explain what he did and that he made an
> error, and he explained it.  So based on that, the court is
> going to not allow counsel to cross-examine him in regard
> to the ADLRO. . . .

Defense counsel registered his objection to the ruling.  The
district court then went into greater detail about how it was
applying the evidence rules to the notices of intent, stating
the following:

> [T]here's a whole bunch of rules that the court has to look
> at in regard to this, relevancy, 402, 404 -- . . . . . 608.
> [S]pecifically, for 608(b), the court has to look for
> specific instances of conduct of a witness for the -- for
> the purpose of attacking the witness's credibility if
> probative of untruthfulness.  That's when it can be
> inquired into on cross-examination.  So in light of the
> fact that at the time when he was questioned about it, he
> explained it and -- and -- and that -- and of that nature,
> then the court is going to -- that's why the court's
> denying it. . . .

With respect to the second notice of intent, the district
court ruled that defense counsel could not cross-examine Officer
Spiker about the Lee proceedings, rejecting defense counsel's
assertion that Judge Kupau found Officer Spiker "not credible"
as follows:

14

> I don't know that [Judge Kupau] didn't find [Officer
> Spiker's testimony] credible.  I think he just said that
> the testimony didn't make sense in light of the distances
> and the time, you know.  And so based on that, it does
> sound -- the court doesn't -- at no point does the court
> see [Judge Kupau] say that he finds [Officer Spiker] not
> credible.  The court just notes that he says that the
> testimony does not make sense.  He thinks it's an
> impossibility to travel four to eight seconds at a speed of
> 35 miles an hour while he's going 25 miles an hour 20 miles
> -- 20 yards away and then to cross over for that amount of
> time.  It didn't make sense to the court. . . . Officer
> Spiker was very clear when he said a number of times, you
> know, I'm not sure, I think it's about this amount or this
> distance.  He never particularly said yes, I'm a hundred
> percent sure . . . .  [T]he court's going to note that he
> was trying to be honest, you know, and unfortunately, you
> know, what his testimony was didn't make sense.

Defense counsel noted his objection for the record.

With respect to the third notice of intent, the district court ruled that defense counsel could not cross-examine Officer Spiker about the Thomas proceedings:

> THE COURT:  [L]ooking at . . . what was printed, the
> court's not going to find that [Officer Spiker] lied that
> -- or that he misrepresented in his police report.  That
> was his version of what occurred.  It may not be exactly
> how it all played out, but that's what he saw.  And -- the
> court's going to say that based on the photos, it's not --
> it's not a hundred percent clear that he was lying or that
> he was making something up.  There was clearly some kind of
> confrontation. . . .
>
> [DEFENSE COUNSEL]:  Well, I mean, I don't know if I want to
> say he's lying, but . . . what he puts in his reports is
> very inaccurate of what actually transpired.  At no time in
> the video do you ever see the person squaring up with
> clenched fists.
>
> . . . .
>
> THE COURT:  I only have stills.  The court does not see any
> clenched fist.  But the court does see body language that
> could indicate that he -- the defendant was squaring up
> . . . .
>
> The court doesn't have the entire video.  The court --
> . . . . the pictures that the court has, I can't see
> clearly his fists. . . .

> But nevertheless, just because someone's not in a typical boxing stance, doesn't mean that they're not in a stance to fight.
>
> . . . .
>
> So that's why the court is going to deny that.

Defense counsel noted his objection for the record. After the district court ruled on all three of the defense's notices of intent, cross-examination of Officer Spiker proceeded.

The district court ultimately found Su guilty of OVUII. In issuing its ruling from the bench, the district court made a specific finding that Officer Spiker's testimony was credible. As to whether Su's driving indicated he was impaired, the district court noted "for some reason, it seems to be that a lot of people on mopeds seem to like to do that little 'S' thing," so that manner of operating the moped "in and of itself wasn't a strong indicator" of impaired driving to the district court. However, the district court expressed its concern that Su had crossed over into other lanes of travel and could have gotten hurt. The district court also explained how it weighed the officers' testimonies as follows:

> [I]n making the decision on the impairment, the court weighs the driving with the field sobriety test so that everyone understands that the court -- if there's really bad driving, the court doesn't expect -- doesn't need to expect too much of a bad field sobriety test in order to find that there was impairment. And vice versa, if the driving wasn't too bad, then the -- then the court would be looking for some type of -- I guess worse type of -- or not as doing well on the field sobriety test.

Under the totality of the circumstances, the district court found Su guilty.  Su timely appealed.

## B.  ICA appeal

### 1.  Su's opening brief

On appeal, Su argued the district court erred by precluding cross-examination of Officer Spiker as to his testimony in the Kuni, Lee, and Thomas proceedings.  Su's argument on appeal appears in two paragraphs at the end of his opening brief:

> Despite having given prior notice of 3 different instances of past untruthfulness of Officer Spiker, the trial court did not allow cross examination of any of the notice of intents.  Absent Spiker's testimony, the court would not have concluded that SU was guilty.
> In denying each of the Notice of Intents, it was the court's position that because Spiker tried to explain away his inconsistencies at the time, they were not false.  Yet, that is what cross examination is for.  The alleged falsifications were relevant towards determining Spiker's credibility.  The court could have given whatever weight it wanted to the falsifications, but should have allowed cross examination on the issues raised in the notice of intents in order for it to do so under HRE 608(b).  See State v. Estrada, 69 Haw. 204, 219, 738 P.2d 812, 823 (1987).

Su then asked the ICA to "reverse"[4] his conviction and remand his case for a new trial, as the cumulative effect of any individual errors warranted a new trial.

### 2.  The State's answering brief

The State first noted that HRE Rule 608(b) "allows cross-examination of a witness concerning specific instances of

---

[4]   Under Hawai'i Rules of Appellate Procedure Rule 35(e) (2010), "[w]hen used in an opinion or dispositional order, the word 'reverse' ends litigation on the merits, and the phrase 'vacate and remand' indicates the litigation continues in the court or agency in accordance with the appellate court's instruction." Su's opening brief appears to have requested that the ICA vacate and remand the district court's judgment.

conduct that are relevant to the trait of credibility" and "governs attack of a witness by revelation of that witness' relevant misdeeds," quoting the Supplemental Commentary to HRE Rule 608.  The State argued that the district court did not abuse its discretion in disallowing cross-examination of Officer Spiker concerning the Kuni, Lee, and Thomas proceedings.  First, with respect to the Kuni proceedings, the State argued that the Kuni transcripts showed that Officer Spiker "made a mistake as opposed to showing that Officer Spiker was untruthful."  Second, with respect to the Lee proceedings, the State pointed out that the transcripts do not bear out any express finding by Judge Kupau that Officer Spiker was "uncredible"; rather, Judge Kupau found Officer Spiker's testimony concerning distances and speeds did not make physical sense.  Third, with respect to the Thomas proceedings, the State argued that defense counsel had not put the video-recording into evidence at Su's trial[5]; therefore, there was no basis to argue that the video-recording would demonstrate Officer Spiker's untruthfulness.  Further, the State pointed out that Su's counsel himself argued that Officer Spiker may not necessarily be untruthful, as follows: "Well, I mean, I don't know if I want to say [Officer Spiker is] lying, but . . .

---

[5]     The State did not appear to acknowledge Su's counsel's assertion in his Notice of Intent #3 that the prosecution had destroyed the Thomas video-recording.

18

what he puts in his report is very inaccurate of what actually transpired."

### 3.    The ICA's summary disposition order

The ICA affirmed the district court's judgment in an SDO. Su, SDO at 1.  The ICA stated it "d[id] not disagree" with the district court's finding that "each instance did not constitute examples of untruthfulness under HRE Rule 608(b)."  Su, SDO at 5.  As to the first instance, the ICA concluded, "The transcript of ADLRO proceedings submitted by Su reflected that Officer Spiker had been shown the Notice of Revocation form, which he acknowledged he marked after making copies and that he made a mistake and did not follow his normal procedure."  Id.  The ICA footnoted the fact that neither the purportedly inconsistent ADLRO forms, nor further transcripts in the Kuni proceedings about the purportedly inconsistent ADLRO forms, were entered into the record with Su's first notice of intent.  Su, SDO at 3 n.2.

As to the second instance, the ICA concluded, "The transcript of Officer Spiker's testimony in the Lee case showed that he testified as to estimates of distance and speed and that he was not certain of these numbers."  Su, SDO at 5.

As to the third instance, the ICA concluded, "Finally, although the screen shots of the surveillance videos in the Thomas case did not depict, for example, the clenched fist or a

classic fighting stance that Officer Spiker maintained Thomas displayed during the incident, neither the screen shots nor the video recordings themselves purported to be a complete documentation of the incident."  Su, SDO at 5-6.  The ICA considered each of the instances to be "fairly . . . characterized as mistakes, inaccuracies in memory or differences in interpretations of another's actions."  Su, SDO at 5.

The ICA went on to observe the following:

> Furthermore, the District Court, having consolidated the hearing on the Notices of Intent with trial was able to review all the materials included in those Notices and the additional exhibits presented, and had "in its possession sufficient information to appraise the biases and motivations of the witness" and did not abuse its discretion by preventing further cross-examination of Officer Spiker on these incidents.

Su, SDO at 6 (citing State v. Sabog, 108 Hawai'i 102, 107, 117 P.3d 834, 839 (App. 2005)).

## C.  Certiorari proceedings

On certiorari, Su argues that the ICA erred in ruling that the district court properly precluded cross-examination of Officer Spiker about the Kuni, Lee, and Thomas proceedings. Before this court, Su repeats, verbatim, the two-paragraph argument made before the ICA.  Su further argues that the ICA erred in "agree[ing] with the [district] court that because Spiker tried to explain [the purported discrepancy between Kuni ADLRO forms] away in another proceeding, he had already been questioned about the form and explained it."  As to the notices

20

of intent involving the Lee and Thomas proceedings, Su merely states that he had shown prima facie evidence of untruthfulness on the part of Officer Spiker in these other proceedings; therefore, the ICA erred in concluding that the district court did not abuse its discretion in disallowing cross-examination about Officer Spiker's testimony in those proceedings.

Su also criticizes the ICA's SDO for stating, "Furthermore, the District Court, having consolidated the hearings on the Notices of Intent with trial was able to review all the materials included in those Notices and the additional exhibits presented, and had 'in its possession sufficient information to appraise the biases and motivations of the witness' and did not abuse its discretion by preventing further cross-examination of Officer Spiker on these incidents."  Su, SDO at 6 (citing Sabog, 108 Hawaiʻi at 107, 117 P.3d at 839).  Su contends that the district court excluded the evidence; therefore, it could not have appraised the biases and motivations of Officer Spiker using that evidence.  Su argues that limiting his cross-examination of Officer Spiker was not harmless error, because the district court "ruled[6] that absen[t] Spiker's testimony, she would not have concluded that SU was guilty."

---

[6]     The district court made no such ruling.  It stated that it balanced Officer Cadena's testimony concerning Su's manner of driving with Officer Spiker's testimony concerning Su's performance on the standardized field sobriety tests to determine Su operated his moped while impaired; both

(continued. . .)

The State's Response does not engage with the merits of Su's arguments; rather, the State contends that Su's application merely re-litigates his ICA appeal.

### III.   Standard of review

> [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue.  When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard.  However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

Kealoha v. Cty. of Hawai'i, 74 Haw. 308, 319-20, 844 P.2d 670, 676 (1993).  An abuse of discretion occurs where the trial court "clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant."  State v. Kupihea, 80 Hawai'i 307, 312, 909 P.2d 1122, 1127 (1996).

### IV.   Discussion

Defense counsel sought to impeach Officer Spiker through cross-examining him then introducing extrinsic evidence regarding his testimony in Kuni, Lee, and Thomas under HRE Rule 608(b), which allows the credibility of a witness to be attacked using "[s]pecific instances of conduct" that are "probative of

---

(continued. . .)
officers testified that Su smelled of alcohol and had red, watery, glassy eyes.  Officer Cadena's testimony provides substantial evidence supporting Su's OVUII conviction.

untruthfulness."   The relevant portion of HRE Rule 608(b) states

the following:

> **Specific instances of conduct.**  Specific instances of the conduct of a witness, for the purpose of attacking the witness' credibility, if probative of untruthfulness, may be inquired into on cross-examination of the witness and, in the discretion of the court, may be proved by extrinsic evidence. . . .

The original Commentary to HRE Rule 608(b) states that this

subsection "allows cross-examination of the witness relative to

specific collateral conduct to the extent that such conduct is

relevant to <u>veracity</u>."[7] (Emphasis added.)  The Supplemental

Commentary goes on to state that the intent of the rule is "to

invest the trial judge with discretion to admit the extrinsic

evidence in such a case, assuming the witness is confronted on

cross-examination and denies the material."

Professor Bowman explains that HRE Rule 608(b) governs

misbehavior other than criminal convictions, which are governed

---

[7]     The 1992 Supplemental Commentary to HRE Rule 608(b) states that the rule "allows cross-examination of a witness concerning specific instances of conduct that are relevant to the "<u>trait</u> of credibility." (Emphasis added.) This reference to the word "trait" here should not confuse HRE Rule 608(b) with HRE Rule 608(a), which generally covers the "character trait" of truthfulness or untruthfulness.  HRE Rule 608(a) provides:

> (a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:
>
> (1) The evidence may refer only to character for truthfulness or untruthfulness, and
> (2) Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

by HRE Rule 609.   Addison M. Bowman, <u>Hawaii Rules of Evidence</u> <u>Manual</u> § 608-2[1][A] at 6-42 (2018-2019 ed.) ("<u>Bowman</u>").   <u>Bowman</u> provides examples of the kinds of conduct we have deemed admissible under HRE Rule 608(b), which includes conduct regarding lies and falsifications.   <u>Bowman</u>, § 608-2[1][B] at 6-42-43 (citing, <u>e.g.</u>, <u>In re Estate of Herbert</u>, 90 Hawai'i 443, 465, 979 P.2d 39, 61 (1999) (misrepresentation to probate court in application for probate of will and to administer decedent's estate), and <u>Cozine v. Hawaiian Catamaran, Ltd.</u>, 49 Haw. 77, 412 P.2d 669 (1966) (false affidavit)).   As further explained in <u>Bowman</u>, "[t]he primary factor [in determining admissibility under HRE Rule 608(b)] is the relevance of the proffered impeaching material to affect the witness' credibility." <u>Bowman</u>, § 608-2[1][C] at 6-43.

In examining the ICA's SDO, it is unclear what standard was used to review the trial court's admissibility determination. The ICA stated that it "d[id] not disagree" with the trial court that the <u>Kuni</u>, <u>Lee</u>, and <u>Thomas</u> proceedings "did not constitute examples of untruthfulness under HRE Rule 608(b)." <u>Su</u>, SDO at 5.   It then concluded that the district court "did not abuse its discretion by preventing further cross-examination of Officer Spiker on these incidents." <u>Su</u>, SDO at 6.

We take this opportunity to clarify that, under the plain language of HRE Rule 608(b), admissibility of evidence under HRE

24

Rule 608(b) involves a two-step inquiry:  (1) whether the specific conduct evidence proffered for the purpose of attacking the witness's credibility is probative of untruthfulness, and, if so, (2) whether the probative value of the evidence of the specific conduct is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence pursuant to HRE Rule 403.  An appellate court reviews the trial court's two-step admissibility determination under the right/wrong standard as to the first step, and under the abuse of discretion standard as to the second step.

Thus, under the first step, a witness may generally be cross-examined[8] about specific instances of conduct relevant to

---

[8]     However, when the "witness" is a defendant in a criminal case, allowing cross-examination about specific instances of conduct probative of untruthfulness may not survive an HRE Rule 403 balancing test because they are more prejudicial than probative. State v. Culkin, 97 Hawai'i 206, 35 P.3d 233 (2001), provides an instructive example.  In that case, the prosecution filed a notice of intent to confront the defendant with evidence of using another individual's name to open a checking account and rent a house.  97 Hawai'i at 219, 35 P.3d at 246.  Several other false identification cards were discovered in the search of the house.  Id.  The defense argued admission of that evidence would be prejudicial because of the defendant's upcoming forgery trial stemming from his use of false identification in the other individual's name to open a bank account and rent a house.  Id.  Before trial, the circuit court ruled that if the defendant took the stand, the prosecution could question him about using the other individual's name to open a bank account and rent a house, but it could not cross-examine him about the other false identification cards.  97 Hawai'i at 219-20, 35 P.3d at 246-47.  The defendant took the stand and testified that he only posed for the picture for the false identification in the other individual's name but did, in fact, open up a bank account and rent a house under that name.  97 Hawai'i at 220, 35 P.3d at 247.  The circuit court allowed cross-examination as to the other false identification cards, then the defendant exercised his
(continued. . .)

credibility, if probative of untruthfulness.  A trial court's decision to allow or preclude cross-examination on specific instances of conduct, based upon relevance under HRE Rules 401 and 402,[9] is thus reviewed under the right/wrong standard.

An example of the erroneous admission of irrelevant specific instances of conduct occurred in State v. Stanley, 110 Hawai'i 116, 129 P.3d 1144 (App. 2005).  There, the ICA concluded that the trial court erred in allowing defense counsel to cross-examine the complaining witness about instances in which the complaining witness stuck his middle finger at the defendant, as such conduct was not for the purpose of attacking the witness's credibility under HRE Rule 608(b) and "had nothing to do with dishonesty."  110 Hawaii at 128, 129 P.3d at 1156.

---

(continued. . .)
right against self-incrimination as to that line of questioning.  Id.  We initially held that the "possession of false identification cards, and assorted activities undertaken therewith, were probative of untruthfulness." 97 Hawai'i at 221, 35 P.3d at 248.  We then noted the unfair prejudice engendered by compelling the defendant to assert his fifth amendment privilege in front of the jury.  Id.  We went on to hold that "under the circumstances of this case, the circuit court abused its discretion in permitting the prosecution to cross-examine [the defendant] about multiple false identification cards discovered at his house with foreknowledge that [the defendant] intended to invoke his fifth amendment privilege if questioned about them" because he had an upcoming trial on a forgery charge involving the false identification cards.  97 Hawai'i at 211, 219, 35 P.3d at 238, 246.

[9]    HRE Rule 401 provides, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  HRE Rule 402 provides, "All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawaii, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible."

An example of the erroneous preclusion of relevant specific instances of conduct occurred in State v. Estrada, 69 Haw. 204, 738 P.2d 812 (1987).  In that case, defense counsel sought to cross-examine a complaining witness Maui Police Department ("MPD") police officer, Officer Taguma, alleging that a confidential HPD internal affairs division ("IAD") file would reveal that the officer lied in his application for employment with MPD.  69 Haw. at 211, 738 P.2d at 818.  The circuit court in that case reviewed the IAD file in camera, ruled it irrelevant, and sealed it, without the prosecutor or defense counsel ever viewing the file.  69 Haw. at 211, 738 P.2d at 818. This court concluded that Officer Taguma's "alleged falsifications [on his application for employment with MPD] were relevant towards a determination of his credibility" and "should have been admitted under the guidelines established in HRE Rule 608(b)."  69 Haw. at 219, 738 P.2d at 823.  We added that the finder of fact "should possess all relevant evidence" concerning the falsifications, and that it was "for the [finder of fact] to decide how much weight to give the falsifications."  Id.

Once confronted on cross-examination with specific instances of conduct probative of untruthfulness, the witness may either admit or deny the misdeed.  We then turn to the second step of the HRE Rule 608(b) analysis with respect to the admission of extrinsic evidence regarding the specific instance

27

of conduct.  Even when the witness admits the misdeed, pursuant to the plain language of HRE Rule 608(b), the court has discretion to permit or exclude extrinsic evidence of the misbehavior.  The admission of extrinsic evidence is subject to the trial court's balancing of the probative value of that evidence against the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence, under HRE Rule 403.[10]  The trial court's ruling on the admission of extrinsic evidence is thus reviewed for an abuse of discretion.

Applying the two-step analysis to this case, we note that the district court stopped at the first step of the HRE Rule 608(b) analysis, concluding that none of the three specific instances of conduct were relevant and probative of Officer Spiker's untruthfulness.  The ICA generally agreed.  In reviewing this determination <u>de novo</u>, we conclude that the district court erred in finding that the <u>Kuni</u> and <u>Thomas</u> proceedings were not probative of Officer Spiker's credibility.  As to the <u>Lee</u> proceeding, the district court correctly found the

---

[10]    HRE Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

proffered evidence not relevant to, and probative of, Officer Spiker's untruthfulness.

The district court erred in precluding defense counsel from cross-examining Officer Spiker as to the Kuni ADLRO proceedings because it was a specific instance of conduct clearly relevant to Officer Spiker's credibility that was probative of untruthfulness.  The transcripts of the Kuni proceedings show that Officer Spiker submitted a license revocation form to ADLRO, which he signed, swearing and affirming that it was the same form he gave to the defendant, Kuni.  On cross-examination, he admitted that he altered the form after having given it to Kuni and before submitting it to ADLRO.  The following transcript shows that Officer Spiker submitted a falsely sworn statement to ADLRO:

> ATTORNEY BURK: [counsel for Kuni]:  Okay.  So the form that you issued, the form that you issued to Ms. Kuni is in fact not the form that you provided to the ADLRO?  It is not identical to the one you provided to ADLRO?
>
> OFFICER SPIKER:  Yes.
>
> ATTORNEY BURK:  Okay.  And the form that you issued or gave to the A[D]LRO, handed in to the ADLRO you had altered the form after giving it to Ms. Kuni, correct?
>
> OFFICER SPIKER:  I believe so, yes.
>
> ATTORNEY BURK:  Explain, if you have an explanation, or if you recall.
>
> OFFICER SPIKER:  I can't recall why I did that because normally I normally check it off and then make the copies but I can't recall why, I know she initialed everything that she refused.  I just made an error on my part.  As I recall she did initial a refusal. . . I guess it is just --

>           ATTORNEY BURK:  <u>But whenever, on the form when you swear
>           and affirm that you handed that form to her, that is not in
>           fact true then, correct?</u>
>
>           OFFICER SPIKER:  <u>Yes, in this instance, yes, not true</u>.
>
>           ATTORNEY BURK:  Thank you.  No further questions.

(Emphases added.)

A law enforcement officer's credibility is clearly called into question where he admits to submitting a falsely sworn document in an administrative proceeding due to a departure from his usual practice.  Therefore, the district court erred in precluding cross-examination of Officer Spiker on the <u>Kuni</u> ADLRO proceedings.  We also cannot say that such error was harmless beyond a reasonable doubt, as the outcome of Su's trial hinged upon the credibility of the two HPD witnesses against him.  See <u>State v. Pond</u>, 118 Hawai'i 452, 469, 193 P.3d 368, 385 (2008) (holding trial court's preclusion of defendant's cross-examination of complaining witnesses as to her marijuana use was not harmless beyond a reasonable doubt because there was a reasonable possibility of a different trial outcome had the factfinders been able to judge the credibility of the complaining witness upon cross-examination).  Thus, on this basis, Su's conviction must be vacated.

With respect to the <u>Thomas</u> proceedings, the still photographs of the video-recording apparently show that, contrary to Officer Spiker's police report and trial testimony,

Thomas did not have his fists clenched and was not throwing punches.  Thus, the Thomas proceedings were relevant to Officer Spiker's credibility and probative of untruthfulness.

With regard to the Lee proceedings, the trial court simply rejected Officer Spiker's estimates of distance and speed as "not mak[ing] sense," as related below:

> Looking in the light most favorable to State and resting slowly upon the testimony of Officer Spiker at this point in time, the Court agrees with defense counsel.  Officer Spiker's testimony simply does not make sense as he was -- he testified that she crossed the double solid line three to five yards, which is nine to fifteen feet, at approximately 20 yards away from him in the opposite direction.
> And if she was going the speed limit, and even if he was going at 25 miles an hour, within seconds that places her not only in the direct lane oncoming Officer Spiker, but at 15 feet at his outside estimate would place her in the -- partially the middle lane.  So and in the event at that speed and if we listen to Officer Spiker and that she was at that distance for four to eight seconds simply doesn't make physical sense.
> As a result, the Court cannot take his testimony and grants the motion for judgment of acquittal.

Indeed, in the Lee case, Officer Spiker conceded on cross-examination that he was "estimating," "c[ould]n't speculate" as to his speed, and "c[ould]n't recall" Lee's speed.  Thus, the district court did not err in disallowing use of this evidence in cross-examining Officer Spiker.  The proffered evidence was not relevant to Officer Spiker's credibility and was therefore inadmissible under HRE Rule 608(b).

Thus, on remand, based on the first step of the HRE Rule 608(b) analysis, Su is entitled to cross-examine Officer Spiker as to the Kuni and Thomas matters.  The extent of the cross-

examination, as well as the admissibility of extrinsic evidence, if offered, is subject to an HRE Rule 403 analysis.

Lastly, we address the ICA's statement that the district court "had 'in its possession sufficient information to appraise the biases and motivations of the witness' and did not abuse its discretion by preventing further cross-examination of Officer Spiker" concerning his testimony in the Kuni, Lee, and Thomas proceedings.  Su, SDO at 6.  To the extent the ICA suggests that the district court reached its judgment by taking into account evidence it had excluded, such suggestion is wrong.  It is "well established that a judge [in a bench trial] is presumed not to be influenced by incompetent evidence."  State v. Vliet, 91 Hawai'i 288, 298, 983 P.2d 189, 199 (1999).

### V.  Conclusion

For the foregoing reasons, we vacate the ICA's July 2, 2019 Judgment on Appeal, as well as the district court's August 2, 2018 Judgment.  This case is remanded to the district court for further proceedings consistent with this opinion.

Jonathan Burge
for petitioner

Sonja P. McCullen
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

