**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000121
27-JAN-2021
07:54 AM
Dkt. 137 SO**

NO. CAAP-18-0000121

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
MICHELLE SALVAS, Defendant-Appellant, and
CORY SARIMENTO, Defendant-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR. NO. 5PC-13-1-000442)


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Michelle Salvas (**Salvas**) appeals from the Judgment of Conviction and Sentence (**Judgment**) entered against her and in favor of Plaintiff-Appellee the State of Hawaiʻi (**State**) on February 2, 2018, in the Circuit Court of the Fifth Circuit (**Circuit Court**).[1] The charges against Salvas and co-defendant Cory Sarmiento (**Sarmiento**) (collectively, **Defendants**) were tried before a jury from July 17, 2016, through July 24, 2016. Salvas was found guilty of: two counts of

---

[1] The Honorable Randal G.B. Valenciano presided.

Promoting a Dangerous Drug in the Third Degree, in violation of Hawaii Revised Statutes (**HRS**) § 712-1243 (2014) (Counts 8 and 10);[2] two counts of Prohibited Acts Related to Drug Paraphernalia, in violation of HRS § 329-43.5(a) (2010) (Counts 9 and 11);[3] and, one count of Promoting a Detrimental Drug in the Third Degree, in violation of HRS § 712-1249 (2014) (Count 12).[4] Salvas was sentenced to an open term of five years in prison for Counts 8 and 10, 30 days in jail for Count 12, and various monetary fines, with all sentences of incarceration to be served concurrently.

---

[2]     HRS § 712-1243 provides:

> **§ 712-1243  Promoting a dangerous drug in the third degree.**  (1)  A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.
>      (2)  Promoting a dangerous drug in the third degree is a class C felony.

[3]     HRS § 329-43.5 provides, in relevant part:

> **§ 329-43.5  Prohibited acts related to drug paraphernalia.**  (a)  It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706-660 and, if appropriate as provided in section 706-641, fined pursuant to section 706-640.

[4]     HRS § 712-1249 provides:

> **§ 712-1249  Promoting a detrimental drug in the third degree.**  (1)  A person commits the offense of promoting a detrimental drug in the third degree if the person knowingly possesses any marijuana or any Schedule V substance in any amount.
>      (2)  Promoting a detrimental drug in the third degree is a petty misdemeanor.

Salvas raises four points of error on appeal, contending that the Circuit Court:  (1) violated Salvas's Due Process rights when it denied her May 12, 2014 Motion For Bill of Particulars (**Motion for Bill of Particulars**),[5] denied her April 26, 2016 Motion To Compel Discovery (**Motion to Compel**), granted (in part) the State's August 31, 2015 First Motion *in limine* (**State's First Motion *in limine***), and granted the State's July 11, 2016 Second Motion *in limine* (**State's Second Motion *in limine***); (2) erred in denying Salvas's July 8, 2016 First Motion *in limine* (**Salvas's First Motion *in limine***); (3) erred in denying Salvas's July 20, 2017 Motion for a Judgment of Acquittal (**Motion for Judgment of Acquittal**); and (4) erred in allowing non-contraband items into evidence.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Salvas's points of error as follows:

(1)  Salvas argues that a number of the Circuit Court's pre-trial orders violated her fundamental due process right to a fair trial.

Motion for Bill of Particulars

Salvas first contends that the Circuit Court abused its discretion in failing to order the State to furnish Defendants

---

[5]     Sarmiento filed the subject motion on May 12, 2014, and on May 29, 2014, Salvas filed a joinder in the motion.

with a written bill of particulars in response to a motion filed by Sarmiento and joined by Salvas. A bill of particulars is designed to inform a defendant of the specifics of the charge(s) brought against him; the "primary purpose[] of a bill of particulars . . . [is] to enable a defendant to prepare for trial and to prevent surprise." State v. Valenzona, 92 Hawaiʻi 449, 452, 992 P.2d 718, 721 (App. 1999).

> Under [Hawaiʻi Rules of Penal Procedure (**HRPP**)] 7(g), the trial court "may direct the filing of a bill of particulars." HRPP § 7(g) (2007);[6] see also HRS § 806-47 (1993).[7] "A trial court has the discretion to order a bill of particulars, and it must exercise this discretion in consideration of the purpose of a bill of particulars, which is to help the defendant prepare for trial and to prevent surprise." [State v.] Balanza, 93 Hawaiʻi [279,] 286, 1 P.3d [281,] 288 [(2000)] (citing State v. Reed, 77 Hawaiʻi 72, 78, 881 P.2d 1218, 1224 (1994)(overruled on other

---

[6] The rule provides, in relevant part:

**Rule 7.INDICTMENT, INFORMATION, OR COMPLAINT.**
. . . .
**(g) Bill of particulars**. The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or within 10 days after arraignment or at such other later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires.

[7] The statute provides:

**§ 806-47 Bill of particulars**. If the court is of the opinion that the accused in any criminal case has been actually misled and prejudiced in the accused's defense upon the merits of any defect, imperfection, or omission in the indictment, insufficient to warrant the quashing of the indictment, or by any variance, not fatal, between the allegations and the proof, the prosecuting officer shall, when so ordered by the court, acting upon its own motion or upon motion of the prosecution or defendant, file in court and serve upon the defendant, upon such terms as the court imposes, a bill of particulars of the matters in regard to which the court finds that the defendant should be informed.
In determining whether further information, and if so what information, is desirable for the defense of the accused upon the merits of the case, the court shall consider the whole record of the case and the entire course of the proceedings against the accused.

> grounds by <u>Balanza</u>, 93 Hawaiʻi at 288, 1 P.3d at 290)). A bill of particulars is not required if the information requested by the defendant has been provided in some other satisfactory form. <u>Reed</u>, 77 Hawaiʻi at 78, 881 P.2d at 1224; <u>see</u> <u>also</u> 1 C. Wright & A. Leipold, *Federal Practice and Procedure: Criminal* § 130, at 664 (4th ed. 2008) ("[N]o bill is required if the government has provided the desired information through pretrial discovery or in some other satisfactory manner.").

<u>State v. Corder</u>, 121 Hawaiʻi 451, 453-54, 220 P.3d 1032, 1034-35 (2009).

> In <u>Corder</u>, that defendant was charged with two

> > separate violations of [a Family Court's Extended Order for Protection (**EOP**)]. For each count, the Complaint listed the date of the alleged offense, the order for protection allegedly violated, and the statutes under which Corder was charged, namely [HRS] Sections 586-5.5 and 586-11(a)(1)(A).
> > The Complaint also identified the police reports underlying the charged offenses as Hawaiʻi Police Department (HPD) Report No. 07-021001 for Count II and HPD Report No. 07-026265 for Count III. The cited police reports detailed Corder's alleged conduct and noted the section of the EOP the officer believed was violated. [The defendant did] not dispute that copies of each police report were provided to him in discovery.

<u>Id.</u> at 452, 220 P.3d at 1033 (footnotes omitted).

> The Hawaiʻi Supreme Court affirmed that a trial court "need not order the State to provide a bill of particulars detailing information that has been provided in some other satisfactory form" and that the <u>Corder</u> trial court "was within its discretion to find that the Complaint, the EOP and the police reports were sufficient to apprise Corder of the charges against him." <u>Id.</u> at 456, 220 P.3d at 1037.

> Here, Counts 8 and 10 each charged:

> > On or about the 13th day of July, 2012, in the County of Kauai, State of Hawaii, MICHELLE SALVAS did knowingly possess the dangerous drug methamphetamine, in any amount, thereby committing the offense of Promoting a Dangerous Drug in the Third Degree, in violation of Section 712-1243 of the Hawaii Revised Statutes.

Count 12 charged Salvas with:

> On or about the 13th day of July, 2012, in the County of Kauai, State of Hawaii, MICHELLE SALVAS did knowingly possess marijuana, in any amount, thereby committing the offense of Promoting a Detrimental Drug in the Third Degree, in violation of Section 712-1249 of the Hawaii Revised Statutes.

Counts 9 and 11 each charged Salvas with:

> On or about the 13th day of July, 2012, in the County of Kauai, State of Hawaii, MICHELLE SALVAS, did use or possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of Chapter 329 of the Hawaii Revised Statutes, thereby committing the offense of Unlawful Use of Drug Paraphernalia, in violation of Section 329-43.5(a) of the Hawaii Revised Statutes.

The Felony Information and Non-felony Complaint thus identified the date that Salvas allegedly committed the offenses, the prohibited substances (methamphetamine or marijuana) that Salvas allegedly possessed, and the statutes that were allegedly violated by Salvas's possession.

Further, the record shows that the State produced substantial discovery which included, *inter alia*, the felony information packet, police reports, lab reports, and digital photos. The State had produced Officer Colin Nesbitt's (**Officer Nesbitt**) declaration supporting the Felony Information that detailed the Kauai Police Department's (**KPD's**) seizure of Salvas's Vehicle during the stop when Salvas and Sarmiento were detained, KPD's steps in ensuring the chain of custody with the transport of Salvas's vehicle from the stop scene to the KPD location where a search warrant was executed, an inventory of

evidence recovered during the execution of the search warrant, and the steps in arranging tests of the substances and related reports of positive tests for methamphetamine and marijuana. While there were numerous items recovered in the search, the State provided discovery that included two Baggies found to contain methamphetamine, as well as a quantity of marijuana.[8]

The discovery already provided to Salvas prior to the hearing on the Motion for Bill of Particulars identified items for: two HRS § 712-1243 dangerous drug charges, two different quantities of methamphetamine; two HRS § 329-43.5(a) drug paraphernalia charges, two Baggies containing the methamphetamine; and one HRS § 712-1249 detrimental drug charge, seized marijuana. See Reed, 77 Hawaiʻi at 78, 881 P.2d at 1224 ("[A] bill of particulars is not required if the information called for has been provided 'in some other satisfactory form.'"). Although there were more than two items of paraphernalia identified, it appears Salvas was sufficiently apprised of the evidence supporting the paraphernalia charges as well. Salvas provides no authority supporting her argument that

---

[8]     As the State acknowledges, subsequent to the hearing on the Motion for Bill of Particulars, one of the State's witnesses conducted tests on red liquid taken from a bong that was reportedly thrown from Salvas's vehicle, and found it to contain methamphetamine, and this constituted additional evidence that could establish two counts of Promoting a Dangerous Drug in the Third Degree. However, in Sarmiento's subsequent motion to continue trial, which was joined by Salvas, Sarmiento acknowledged receiving additional laboratory testing results, which appears to refer to the testing of the bong liquid. Defendants did not file a renewed motion based on the State's provision of this additional discovery.

the Circuit Court should have ordered the State to specify what drug/paraphernalia item was attributable to each defendant.

Accordingly, we cannot conclude that the Circuit Court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to Salvas's substantial detriment by impeding her ability to prepare for trial without concern of prejudicial surprise at trial, as to the evidence the State had available to prove each charge. See Corder, 121 Hawaiʻi at 454, 220 P.3d at 1035. Thus, we conclude that the Circuit Court did not abuse its discretion in denying the Motion for Bill of Particulars.

Motion to Compel

Salvas further contends that she was deprived of her due process rights when the Circuit Court denied her request to order the production of multiple items from the State because the discovery "pertained directly to the integrity of the search warrant, and the credibility of all of the many individuals involved" with a controlled buy involving Sarmiento (**Controlled Buy**) and the subsequent search warrant, leaving her unable to properly prepare for trial.

HRPP Rule 16(b) applies to discovery disclosure by the State and requires disclosure of certain material "within the prosecutor's possession or control" including those "material to

the preparation of the defense and are specifically designated in writing by defense counsel[.]"[9]

Salvas made two requests seeking eight categories of items; the State replied by producing one, indicating that it did not have four,[10] and stating that it did not believe that the

---

[9] HRPP Rule 16(b) provides, in relevant part:

**(b) Disclosure by the prosecution.**
(1) DISCLOSURE OF MATTERS WITHIN PROSECUTION'S POSSESSION. The prosecutor shall disclose to the defendant or the defendant's attorney the following material and information within the prosecutor's possession or control:
(i) the names and last known addresses of persons whom the prosecutor intends to call as witnesses in the presentation of the evidence in chief, together with any relevant written or recorded statements, provided that statements recorded by the prosecutor shall not be subject to disclosure;
. . . .
(iv) any books, papers, documents, photographs, or tangible objects which the prosecutor intends to introduce, or which were obtained from or which belong to the defendant, or which are material to the preparation of the defense and are specifically designated in writing by defense counsel;
. . . .
(vii) any material or information which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the defendant's punishment therefor.
(2) DISCLOSURE OF MATTERS NOT WITHIN PROSECUTION'S POSSESSION. Upon written request of defense counsel and specific designation by defense counsel of material or information which would be discoverable if in the possession or control of the prosecutor and which is in the possession or control of other governmental personnel, the prosecutor shall use diligent good faith efforts to cause such material or information to be made available to defense counsel; and if the prosecutor's efforts are unsuccessful the court shall issue suitable subpoenas or orders to cause such material or information to be made available to defense counsel.

[10] These included, broadly, serial numbers of the Currency used in the Controlled Buy, serial numbers/copies of the cash found on Defendants, records of investigation of theft of funds from the KPD controlled buy fund by Lieutenant Karen Kapua (**Lt. Kapua**) and/or other(s), and records of transaction(s) of buy cash between KPD and a confidential informant (**CI**).

remaining three[11] were discoverable under HRPP 16. In opposing Salvas's subsequent Motion to Compel, the State argued, *inter alia*, that the court had already ruled against disclosure of the CI's identity and that, should the State be required to produce records of the Controlled Buy and the logged Currency used in the Controlled Buy, such information could lead to establishing the CI's identity. The State also argued that Lt. Kapua was not involved in the case, would not be a witness in the case, and her disciplinary records were thus immaterial, as well as that discovery related to any thefts from the controlled buy fund, several years after-the-fact, was irrelevant to the probable cause stemming from the Controlled Buy leading to the search warrant in this case. In addition, the State argued that this case involved the discovery of contraband in Defendants' vehicle, and thus sensitive materials related to KPD's controlled buy procedures were not relevant because, in part, if the defense theory that the Controlled Buy never happened was correct, then any falsifications by the officers involved in the alleged Controlled Buy would not be in compliance with the procedures.

At the May 5, 2016 hearing on the Motion to Compel, the parties and the court focused on the discovery that Defendants sought for a theory of the case that: the alleged Controlled Buy

---

[11] These included, broadly, KPD's written controlled buy policies/procedures (including records of the Currency and other cash used at the approximate time of the Controlled Buy in this case), records of testing of the substance allegedly purchased by the CI from Sarmiento in the Controlled Buy, and, KPD's policies or procedures for confidential informants making controlled buys, including documenting the cash used in such buys.

by CI, in early July of 2012, never in fact happened; KPD knew that it never happened; and, thus, the search warrant could be defective under Franks v. Delaware, 438 U.S. 154 (1978). Under Defendants' theory, the discovery could ultimately negate Defendants' guilt if the defective warrant could lead to suppression of the evidence seized under the warrant. HRPP Rule 16(b).

In Franks, the Supreme Court held that a defendant seeking an evidentiary hearing to determine whether a facially valid affidavit contains false statements must make a substantial preliminary showing that: (1) the affidavit contains intentionally or recklessly false statements; and (2) the affidavit cannot support a finding of probable cause without the allegedly false information. In making such a claim, it is the defendant's burden to overcome a presumption that the affidavit was valid. Franks, 438 U.S. at 171. To obtain an evidentiary hearing on the question of falsity, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . . Allegations of negligence or innocent mistake are insufficient." Id. Should a defendant prevail at a Franks evidentiary hearing, evidence obtained on the basis of a search warrant issued on the defective affidavit is properly excluded. Id. at 156.

Here, Salvas's written memorandum in support presented no argument for the Defendants' need for material regarding Lt. Kapua and/or misappropriation of controlled buy funds, nor did the attached exhibits reference Lt. Kapua or an investigation into misappropriation. Likewise, at the hearing on the motion, Salvas made no argument for the material. The State nevertheless argued that Lt. Kapua had no significant involvement in this case and that any investigation into prior misappropriation of controlled buy funds was wholly distinct from the Controlled Buy between CI and Sarmiento that established the probable cause for the search warrant here.

Salvas failed to show how the records of internal disciplinary files for Lt. Kapua and/or records regarding a misappropriation investigation of KPD's controlled buy fund were "material to the preparation of [her] defense" or otherwise fundamental to her defense. See HRPP Rule 16(b)(1). The Circuit Court did not abuse its discretion in denying this discovery.

Defendants argued that KPD records of the cash used by the CI might support their theory that the Controlled Buy never happened and, under Franks, that the search warrant could be invalid. The Circuit Court indicated that it would review, *in camera*, KPD's records of controlled buy cash, to ascertain whether there was discoverable material, which might warrant a Franks evidentiary hearing on whether the Controlled Buy between CI and Sarmiento had occurred or not. After the *in camera* review

12

of the records potentially related to Currency in KPD's Controlled Buy between CI and Sarmiento, and other cash-related records, the Circuit Court held a hearing on June 14, 2016. Salvas again argued that she needed to access the records of the Currency used in the Controlled Buy, *e.g.*, to compare it with cash seized from Defendants upon the execution of the search warrant, in order to establish the need for a <u>Franks</u> evidentiary hearing on the validity of the search warrant. The State responded that it found that there were in fact no identifying records of the cash seized from Defendants because the cash had been civilly forfeited, and no identifying characteristics, such as serial numbers, had been recorded; thus no comparison between the Controlled Buy Currency and the cash seized from Defendants was possible.

Defendants' purported need for discovery of KPD's records of cash used in controlled buys was speculative. The Circuit Court reviewed the available material and found that the material would not support a need for a <u>Franks</u> hearing because of the time interval between the Controlled Buy and the execution of the search warrant days later, as well as the fact that the cash seized from Defendants had not been identified by serial numbers. In addition, the court considered, *inter alia*, that any other marginal relevance was outweighed by the need to protect the CI's identity.

To warrant a <u>Franks</u> hearing, Defendants' theory - that the Controlled Buy never happened but the search warrant affidavit included that it did - needed some specific "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof[.]" <u>Franks</u>, 438 U.S. at 171. Here, there was no evidence or offer of proof supporting the claim that the affidavit was deliberately false because the affiant knew that the Controlled Buy never happened. The court found that the records of the Currency and/or other cash transactions in KPD's controlled buys did not support the asserted need for a <u>Franks</u> hearing, and Salvas made no other argument as to why this discovery was necessary to her defense.

Accordingly, on the record before us, we conclude that the Circuit Court did not abuse its discretion in failing to compel the production of these records.

The final item at issue in the Motion to Compel was KPD's policies and procedures for controlled buy operations and use of confidential informants. As previously discussed, the burden was on Defendants to show something "more than conclusory" in order to overcome the presumption that the affidavit supporting the search warrant was valid. <u>Franks</u>, 438 U.S. at 171-72. While attempting to raise an issue in support of producing the discovery and potentially warranting a <u>Franks</u> hearing, Salvas did not offer any specific argument as to how the

KPD policies and procedures on controlled buys related to whether the Controlled Buy took place, or did not, or how they were otherwise fundamental to her defense under HRPP Rule 16(b). The State presented argument for why the material was not discoverable under either <u>Franks</u> or HRPP Rule 16, and Salvas did not rebut the State's argument. We conclude that the Circuit Court did not clearly exceed the bounds of reason or disregard rules or principles of law or practice to Salvas's substantial detriment, and the Circuit Court's denial of Salvas's Motion to Compel for the policies and procedures did not constitute an abuse of the court's discretion.

<u>State's First Motion *in limine*</u>

As part of the first point of error, Salvas also contends that the Circuit Court erred in granting in part the State's First Motion *in limine*. Salvas argues that the Circuit Court should have denied the motion with respect to: (1) Judge Kathleen Watanabe's April 10, 2012 Findings of Fact and Conclusions of Law in a separate criminal matter, <u>State v. Sullivan</u>, Cr. No. 10-1-0153 (**Sullivan FOFs**); (2) any reference to other acts of Officer Darren Rose (**Officer Rose**); (3) Officer Nesbitt's conviction for Operating a Vehicle under the Influence of an Intoxicant (**OVUII**); (4) records pertaining to Lt. Kapua;[12] (5) records pertaining to certain property damage charges that

---

[12] The State's First Motion *in limine* did not address evidence concerning Lt. Kapua. Rather, this issue was raised in the State's Second Motion *in limine*.

were not pursued by the State; and (6) evidence of KPD's history of employing false pretenses to investigate Salvas.

Salvas argues that the Sullivan FOFs and other references to certain actions of Officer Rose[13] pertained specifically to Officer Rose's credibility, and Salvas submits that Officer Rose is the officer who allegedly found the methamphetamine and provided critical testimony against her. The Sullivan FOFs contained findings that, read together, determined that Officer Rose's testimony in another felony drug case was not truthful. The Circuit Court ruled that the defense could not cross-examine Officer Rose concerning the Sullivan FOFs or otherwise introduce or make references to alleged other acts of Officer Rose (including evidence, testimony, comments or remarks), stating only that the court was not bound by Judge Watanabe's findings in Sullivan.

HRE Rule 608(b) provides, in relevant part:

> **(b) Specific instances of conduct.** Specific instances of the conduct of a witness, for the purpose of attacking the witness' credibility, <u>if probative of untruthfulness,</u> may be inquired into on cross-examination of the witness and, in the discretion of the court, may be proved by extrinsic evidence.

(Emphasis added).

In State v. Su, 147 Hawaiʻi 272, 283, 465 P.3d 719, 730 (2020), the supreme court explained:

> [U]nder the plain language of HRE Rule 608(b), admissibility of evidence under HRE Rule 608(b) involves a two-step inquiry: (1) whether the specific conduct evidence

---

[13] The other references to certain actions of Officer Rose included transcripts of Officer Rose's testimony in Sullivan.

> proffered for the purpose of attacking the witness's
> credibility is probative of untruthfulness, and, if so, (2)
> whether the probative value of the evidence of the specific
> conduct is substantially outweighed by the danger of unfair
> prejudice, confusion of the issues, or misleading the jury,
> or by considerations of undue delay, waste of time, or
> needless presentation of cumulative evidence pursuant to HRE
> Rule 403.

In Su, the supreme court examined a trial court ruling disallowing the cross-examination of Officer Jared Spiker (**Officer Spiker**) about his testimony in three prior proceedings. Id. at 274, 465 P.3d at 721. Discussing and applying its two-step analysis, the supreme court concluded that the trial court erred in the first step with respect to cross-examination of Officer Spiker concerning two of those proceedings: (1) in one proceeding, Officer Spiker admitted that he submitted a falsely sworn statement to ADLRO, which clearly called his credibility into question; and (2) in a second proceeding, still photos of a video-recording showed that, contrary to Officer Spiker's police report and testimony, the defendant did not have his fists clenched and was not throwing punches. Id. at 285, 465 P.3d at 732; see also State v. Estrada, 69 Haw. 204, 219, 738 P.2d 812, 823 (1987) (holding that an officer's alleged falsifications on his employment application were relevant to his credibility and should have been admitted pursuant to HRE Rule 608(b)). With respect to the third proceeding, the supreme court held that the trial court's rejection of Officer Spiker's estimate of distance and speed, because it did not make sense, was not relevant to his credibility. Su, 147 Hawaiʻi at 285, 465 P.3d at 732.

17

Here, in the <u>Sullivan</u> proceeding, Officer Rose testified that a defendant, Rolando Agustin (**Agustin**), was carrying an "itinerary bag" when Agustin was seized by Officer Rose. Officer Rose testified that he knew that if the bag was closed it would have been an illegal search for him to unzip and open the bag and search it. Officer Rose testified that the zipper on the bag was unzipped and that he could see its contents in plain view. A lay witness, who was arriving to work at the site of the incident, testified that when he first saw Agustin and Officer Rose, Agustin had the itinerary bag. From about twenty feet away, with no obstruction to his view, the lay witness saw Officer Rose take the itinerary bag from Agustin and he saw Officer Rose struggling to open the bag. The witness demonstrated a pulling motion that he observed Officer Rose do three or four times in trying to open the bag. He testified that after observing Officer Rose struggle with the bag without success, the officer "figured out it had one zip on the top." He stated that he saw Officer Rose then open the bag, look into the bag, and search it. Judge Watanabe found that the lay witness was credible and had no stake in the outcome and further found, *inter alia*, that the itinerary bag was zipped closed when Officer Rose seized it.

The trial judge in this case did not rule on whether the <u>Sullivan</u> proceedings were relevant, as is required under the two-part analysis discussed in <u>Su</u>. However, the lay witness

testimony in <u>Sullivan</u> constituted evidence that was directly contrary to Officer Rose's sworn testimony and therefore the <u>Sullivan</u> proceedings were relevant to Officer Rose's credibility and probative of untruthfulness. On remand, based on the first prong of the <u>Su</u>/HRE Rule 608(b) analysis, Salvas is entitled to cross-examine Officer Rose as to the <u>Sullivan</u> matter. However, the extent of the cross-examination, and the admissibility of any extrinsic evidence that might be offered, remains subject to an HRE Rule 403 analysis pursuant to the second prong of the <u>Su</u> analysis. <u>See</u> <u>Su</u>, 147 Hawaiʻi at 285, 465 P.3d at 732.

As Officer Rose's testimony and the evidence allegedly discovered by Officer Rose were central to Salvas's conviction, we cannot conclude that the Circuit Court's error in precluding, *inter alia*, all references to <u>Sullivan</u> proceedings was harmless beyond a reasonable doubt. <u>See</u> <u>id.</u> (citation omitted).

Salvas also argues that she should have been allowed to present evidence of Officer Nesbitt's 2015 OVUII conviction because Officer Nesbitt may have "had substance abuse issues during the investigation," which might have impacted his credibility. The Circuit Court rejected this argument and found that Officer Nesbitt's OVUII conviction did not amount to moral turpitude, and there was no indication that the OVUII conviction involved dishonesty or untruthfulness. We likewise conclude that, without more, an OVUII conviction does not tend to show dishonesty, untruthfulness, or a lack of credibility, and that

this evidence was not admissible under HRE Rule 608(b). See Su, 147 Hawaiʻi at 283, 465 P.3d at 730 (the first step in the two-step HRE Rule 608(b) inquiry is "whether the specific conduct evidence proffered for the purpose of attacking the witness's credibility is probative of untruthfulness").

Salvas further argues that she "should have been given the right to cross-examine KPD officers as to the circumstances regarding the reasons why an original charge of Criminal Property Damage [(**CPD**)] was not pursued" because the defense should have been allowed to show the jury that "the officers likely realized that they lacked credibility in charging the CPD offense." The State had sought an order "precluding the defense from introducing or making any references at any phase of trial . . . that the State dismissed counts or did not proceed with counts previously charged in cases based on this incident."

At an August 4, 2016 hearing, the Circuit Court stated:

> THE COURT: I think generally you can talk about the circumstances that led to the stop -- to the case, but I'm not -- we're not trying to do a trial on charges that have been -- that are not being pursued by the State. So that's the concern the Court has. I don't want to do a trial on charges that are not before the jury.
> If it's part of the general circumstances, then you can -- we can lead up to that. But I'm not going to allow a trial on charges that are not before the jury.
>
> MR. HEMPEY: Can I -- I guess can I just --to explore the parameters a little bit –
>
> THE COURT: So there's not going to be a preclusion, but there's going to be a limit on the amount of evidence that comes in that leads up to the possession issues.
>
> MR. HEMPEY: So I can cross on the police reports and the fact that they tried to get that charged and maybe -- I don't know if I can ask that it was charged and then later dismissed.

> THE COURT: So number nine will be granted in part and denied in part. I'm not going to allow–
>
> [Prosecutor] MR. TATE: Yes.
>
> THE COURT: -- a total preclusion, but there's going to be a limitation on the amount of evidence, because we're not going to do a trial on charges that are not before the Court.

Thus, the Circuit Court did not wholly preclude Salvas from presenting this evidence; rather, the court indicated that it would limit the amount of evidence that could be presented on charges that were not before the jury.  We conclude that the Circuit Court did not abuse its discretion in this regard.

Salvas's final argument on this point is that she should have been allowed to cross-examine KPD officers as to "past acts" in which Defendants had been detained by KPD on false pretenses.[14]  Salvas contends that "[s]uch acts once again had direct bearing on the motive and credibility of KPD officers in pursuing the present investigation and subsequent case against [Salvas]."  On appeal, Salvas does not specify which incident(s) constituted such "past acts," but her argument appears to stem from the Circuit Court's granting of State's First Motion *in Limine*'s item 7 and encompassed, *inter alia*, an alleged incident in September of 2014, which involved KPD officers conducting a traffic stop of Defendants.  The officers purportedly falsely

---

[14]  Although the issue is framed as "past acts," the specific incident in fact took place years after the incident underlying the charges in this case.

threatened that they had a warrant for one or both Defendants and/or could see contraband in plain view in the back of Defendants' vehicle.

HRE Rule 608 provides that "[s]pecific instances of the conduct <u>of a witness</u>, for the purpose of attacking <u>the witness' credibility</u>, if probative of untruthfulness, may be inquired into on cross-examination of the witness[.]"  HRE Rule 608(b) (emphasis added).  HRE Rule 609.1 provides that "[t]he credibility <u>of a witness</u> may be attacked by evidence of bias, interest, or motive."  HRE Rule 609.1(a) (emphasis added).  "Bias, interest, or motive is always relevant under HRE Rule 609.1."  <u>Estrada</u>, 69 Haw. at 220, 738 P.2d at 823.

Here, Salvas's opposition to the State's request was based principally on video footage from the September 2014 incident involving Defendants and unidentified KPD officers, which Defendants argued showed bias, interest, and/or motive of KPD officer(s) against Defendants, as well as that KPD officers were willing to lie in their harassment of Defendants.  The State argued that the video footage did not support that argument, the officers involved were not identifiable from the video footage, and therefore the alleged incident was not relevant, and reference to that incident would be highly prejudicial and confusing to the jury.  The video footage is not part of the record on appeal.  In any case, Defendants did not identify which

KPD officers were involved in the incident or which officer-witnesses they should have been allowed to confront and impeach based on an alleged further history of "KPD officers" employing false pretenses to investigate Defendants. On appeal, Salvas again fails to state which witness(es) she should have been allowed to confront and fails to cite any authority supporting her argument. Based on our review of the entire record before us, we conclude that this argument is without merit.

The State's Second Motion *in limine*

In the State's Second Motion *in limine*, the State sought an order precluding any evidence of any alleged acts of Lt. Kapua, arguing that Lt. Kapua was not involved in the case, would not be a witness, any of Lt. Kapua's involvement with other KPD vice matters such as other controlled buys was not relevant to the discovery of contraband in Salvas's vehicle during the stop, and that the risk of unfair prejudice from Lt. Kapua's other acts outweighed any probative value. The Circuit Court granted the State's motion. On appeal, Salvas contends that she should have been "afforded her right to cross-examine [Lt. Kapua] as to her arrest for embezzling monies from KPD drug investigations." We conclude, however, as Lt. Kapua did not testify at the trial, Salvas was not deprived of her right to cross-examine Lt. Kapua.

(2)   Salvas contends, based on HRE Rules 401 and 403, that the Circuit Court erred in denying Salvas's First Motion *in limine* and allowing the State to present testimony regarding the existence of a search warrant and testimony that Defendants were in a romantic relationship at the time of the arrest.

The State opposed Salvas's motion with respect to the existence of a search warrant based on concern that, if the jury was not informed that the officers had a search warrant for the vehicle, jurors would speculate that the officers engaged in improper conduct.  The State argued that this was particularly relevant in light of the fact that the defense had alleged police misconduct in this case.  The Circuit Court granted in part Salvas's First Motion *in limine* and allowed the mention of the search warrant, but disallowed evidence of the details of the basis for its issuance.  The search warrant was not admitted into evidence, but Sgt. Nesbitt testified that the July 13, 2012 search of the Dodge Neon, which was registered to Salvas, was done pursuant to a warrant for the vehicle and Sarmiento's person.  We conclude that the Circuit Court did not err as to the issue of relevance, or abuse its discretion as to the balancing of its probativeness and potential prejudice, or the determination to allow limited reference to the search of the vehicle pursuant to a warrant.

Regarding the Defendants' relationship, the State argued that one of its theories of the case was that the items found in Salvas's vehicle were constructively possessed by both Defendants (see HRS §712-1251 (2014)), and that evidence of a relationship was relevant to Sarmiento's right to be in and/or operate Salvas's vehicle, as well as to possess items in the vehicle. The Circuit Court found the existence of a relationship between the Defendants was relevant and denied that aspect of the motion. However, the court limited the evidence presented by the State, and it appears that the only evidence in the record before the jury was police testimony that both Defendants had the same residential address.

Based on the record before us, we cannot conclude that the Circuit Court erred or abused its discretion in ruling on Salvas's First Motion *in limine*.

(3) Salvas argues that because the State could not present a "clear, unbroken" chain of custody on methamphetamine, the State lacked evidence to support a *prima facie* case for all counts against her, and the Circuit Court thus erred in denying Salvas's Motion for Judgment of Acquittal. Salvas does not specify which item(s) of "the drug methamphetamine" in evidence were subject to a faulty chain of custody nor how the chain of custody was faulty.

Regarding the chain of custody of evidence, the supreme court has held:

> In showing chain of custody, all possibilities of tampering with an exhibit need not be negated.  Chain of custody is sufficiently established where it is reasonably certain that no tampering took place, with any doubt going to the weight of the evidence.  An accounting of hand-to-hand custody of the evidence between the time it is obtained and the time admitted to trial is not required in establishing chain of custody.  And despite the mere possibility that others may have had access to the exhibits, there exists a reasonable certainty that no tampering took place[.]
>
> In order to justify the admission of physical evidence it is not required that the chain of custody be shown with perfect precision.  The trial court may admit the evidence when satisfied it is [] reasonably probable that tampering, substitution or alteration of evidence did not occur.  Absolute certainty is not required.

State v. DeSilva, 64 Haw. 40, 41-42, 636 P.2d 728, 730 (1981) (citations omitted; format altered).

The record here shows three potential items in evidence for "the drug methamphetamine":  the two Baggies containing material that tested positive as methamphetamine, and a red liquid recovered from a bong that tested positive for methamphetamine.  The record shows that Defendants argued that evidence related to the bong and its red liquid should not be admitted based on grounds of a faulty chain of custody, including Officer Rose's testimony, but the record does not show any argument for a faulty chain of custody with respect to the two Baggies tested to contain methamphetamine.  The State presented testimony from a series of witnesses, including Officer Rose, regarding his observation of the bong being thrown from the

26

vehicle, his recovery of the bong and liquid, and delivery to Officer Nesbitt, as well as Officer Nesbitt's testimony, and the testimony of a KPD evidence custodian regarding storage and documented transfers for testing, as well as testimony of a State employee who received, tested, and returned the red liquid to KPD. We conclude that the Circuit Court did not abuse its discretion in finding that the chain of custody was sufficiently established to allow the admission of evidence of methamphetamine in the red liquid over Defendants' chain-of-custody objections. Therefore, we further conclude that the Circuit Court did not err in denying Salvas's Motion for a Judgment of Acquittal.

(4) Finally, Salvas argues that she was prejudiced by the admission of non-contraband evidence, but she does not identify any specific "non-contraband" items whose admission prejudiced her defense. Salvas does not cite to where in the record the alleged error occurred or state whether she objected to the evidence. Salvas does not state how the unidentified items, which were "not illegal," were prejudicial and misleading. Accordingly, this point of error is disregarded. See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4).

As we have concluded that the Circuit Court erred in precluding Salvas from, *inter alia*, cross-examining Officer Rose as to his testimony in the Sullivan matter, as discussed above,

and further concluded that this error was not harmless beyond a reasonable doubt, the Judgment is vacated and this case is remanded for a new trial.

DATED: Honolulu, Hawaiʻi, January 27, 2021.

On the briefs:

Rosa Flores,
for Defendant-Appellant.

Tracy Murakami,
Deputy Prosecuting Attorney,
County of Kauai,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge